# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALRADA FINANCIAL CORPORATION, a Wyoming corporation; DALRADA PRECISION PARTS, INC., a California Corporation and wholly owned subsidiary of Dalrada Financial Corp., <br><br> Plaintiffs, <br><br> v. <br><br> DEPREY COMPANY, et al., <br><br> Defendants. | Case No.: 3:24-cv-01185-RBM-DEB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEPREY DEFENDANTS' MOTION TO DISMISS** <br><br> [Doc. 3] |

Pending before the Court is Defendants DePrey Company and Steven A. DePrey's (collectively, the "DePrey Defendants") Motion to Dismiss ("Motion to Dismiss"). (Doc. 3.) On October 1, 2024, Plaintiffs Dalrada Financial Corporation and Dalrada Precision Parts, Inc. ("Plaintiffs") filed an Opposition to Defendants' Motion to Dismiss ("Opposition"). (Doc. 5.) On October 11, 2024, the DePrey Defendants filed a Reply in support of the Motion ("Reply). (Doc. 6-1).[1]

---

[1] The DePrey Defendants filed their Reply concurrently with a Motion for Leave to file their Reply beyond the deadline due to excusable neglect. (Doc. 6 at 2.) The Court granted the DePrey Defendants' Motion for Leave. (Doc. 11.)

1

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, the DePrey Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND[2]

This case concerns a contractual dispute between Plaintiffs and the DePrey Defendants. On July 10, 2024, Plaintiffs filed the instant Complaint asserting claims for: (1) breach of a written contract (based on two different contracts); (2) breach of the implied covenant of good faith and fair dealing; (3) intentional interference with prospective economic advantage; (4) tortious interference with business relations; (5) unjust enrichment; (6) civil conspiracy; (7) federal RICO violations; and (8) intentional misrepresentation (fraud). (Compl. [Doc. 1] at 1, 8–15.)[3]

**A.    The Sales Representative Agreement**

On or about May 3, 2021, Defendant DePrey Company, LLC ("Defendant Deprey Co.") and Plaintiffs entered into a Sales Representative Agreement where Defendant Deprey Co. was to "bring in" a large contract with a third-party company, Fastenal Company ("Fastenal"), for the custom manufacturing of steel parts (the "Written Contract"). (Compl. ¶ 14; *see* Compl., Ex. C [Doc. 1-2] at 7–12.) Under the terms and conditions of the Written Contract, Plaintiffs paid Defendant DePrey Co. a commission "in the amount of 10% on gross sales for accounts it brought in for Plaintiff." (*Id.*)

Pursuant to its terms, either party was allowed to "terminate the [Written Contract] with or without cause by providing a written notice to the other party at least 60 (sixty) days prior to the effective date of termination." (*Id.* ¶ 18.)

---

[2] The factual summary in this section reflects Plaintiffs' allegations, not conclusions of fact or law by this Court. Well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] The Court cites the paragraph numbers of the Complaint and the CM/ECF electronic pagination for other citations unless otherwise noted.

B. **Fastenal Account**

On or around September 2021, Defendant Deprey Co. brought the Fastenal account to Plaintiffs. (*Id*. ¶ 15.) Defendant Simon Gray ("Defendant Gray") was the Chief Operations Officer for Plaintiffs responsible for receiving and processing purchase orders from Plaintiffs' customers.[4] (*Id*. ¶¶ 12, 15.) As part of the process, Defendant Gray sent the processed purchase orders to Plaintiffs for fulfillment. (*Id*.) "Plaintiffs would then send the [p]urchase [o]rders to their manufacturer, which in this case was Mide Global Corporation located in Guangdong Province, China who would then ship the orders directly to customers." (*Id*. ¶ 15.) "The contractual relationship between Plaintiffs and Fastenal continued from September 2021 until approximately December 2023." (*Id*. ¶ 17.)

C. **The Breach**

On or around December 19, 2023, Defendant Pay Muench ("Defendant Muench"), an employee of Defendant DePrey Co., sent an email to the "General Manager for Fastenal providing instructions to cancel any existing open purchase orders with Plaintiffs and switch said purchase orders to Mide Global Corporation." (*Id*. ¶¶ 7, 17.) Defendant Muench stated that "effective immediately" Defendant DePrey Co. would no longer represent Plaintiffs and would instead be "working directly with Mide." (*Id*. ¶ 17.) On that same day, a sales specialist for Fastenal sent an email to Defendant Gray, who was still working as an employee of Plaintiffs, "instructing [Defendant] Gray to cancel [Plaintiffs'] Purchase orders." (*Id*. ¶ 19 (citation omitted).)

Plaintiffs allege that the DePrey Defendants "circumvented the process and changed the purchase orders from Plaintiffs to Mide" (*id*. ¶ 27) and thereby breached Sections 3.2, 3.5, and 10 of the Written Contract. (*Id*. ¶¶ 33–35.) "Defendants have breached their duties

---

[4] Defendants Simon Gray and Pay Muench have not joined this Motion to Dismiss or otherwise appeared in this action. Accordingly, this Order only addresses the claims and allegations against the DePrey Defendants. The Court further notes that Plaintiffs filed the Complaint on July 16, 2024, but have not yet filed a proof of service demonstrating that Defendants Simon Gray or Pay Muench were properly or timely served. *See* Fed. R. Civ. P. 4(m); S.D. Cal. Civ. R. 4.1(a).

and obligations under Section 3.2 of the subject [Written Contract] wherein they were to provide complete cooperation to Plaintiffs in order to assist Plaintiffs in maximizing success within the territory in which Defendants acted as sales representatives." (*Id*.) The DePrey Defendants also allegedly breached "Section 3.5 (Prohibited Acts) . . . by willfully, intentionally[,] and maliciously (1) directly making representations on behalf of Plaintiffs and/or its products without Plaintiffs' consent; (2) engaging in unfair, anti-competitive, misleading and deceptive practices with respect to Plaintiffs and its products including disparagement and trade libel of Plaintiffs; (3) selling, promoting or soliciting the sale of or offer to sell any goods that compete with the products being sold by Plaintiffs." (*Id*. ¶ 34.) The DePrey Defendants further breached "Section 10 of the [Written Contract] by failing and/or refusing to submit written notice to Plaintiffs informing them of the intent to terminate the agreement 60 days prior to the effective termination date." (*Id*. ¶ 35.)

Defendant DePrey Co. "did not provide any notice to Plaintiffs that they intended to terminate their contractual agreement until January 10, 2024." (*Id*. ¶ 18.) "As such, Plaintiffs allege that the [Written Contract] was still in full force and effect at the time" of the alleged breach. (*Id*.) "On or about January 9, 2024[,] Plaintiffs paid the sum of $6,957.15 to Defendant DePrey Co. as their commission for December accounts." (*Id*. ¶ 23.) "On or about January 10, 2024[,] after receiving its commission payment, Defendant Steven DePrey sent an email to Dalrada Precision Parts President David Pickett stating that DePrey no longer wanted to represent Plaintiffs." (*Id*. ¶ 24.) After the Deprey Defendants allegedly "breached their duties and contractual obligations to Plaintiffs," and "sought to terminate their relationship with Plaintiffs[,] [Defendant] Gray continued to use Plaintiffs['] FedEx account to ship products to customers who had [a] relationship with Plaintiffs which amounted to approximately $5,617.85." (*Id*. ¶ 21.)

"On or about January 22[,] 2024, Plaintiffs' legal counsel sent a letter to [the DePrey Defendants] advising them that they were in breach of the [Written Contract]." (*Id*. ¶ 25.) "On or about March 15, 2024, Plaintiffs received an email from Shining Ocean, a company that Plaintiffs used for shipping the orders from Mide to Plaintiffs' customers, with an

invoice for $2,000" for shipments received on December 15, 2023.  (*Id.* ¶ 27.)  As a result of Fastenal's cancelled purchase orders, Plaintiff experienced financial losses over $800,000.  (*Id.* ¶ 21.)

**D.    The DePrey Defendants' Motion to Dismiss**

On September 4, 2024, the Deprey Defendants filed the instant Motion to Dismiss.  (*See* Doc. 3 at 2.)  The DePrey Defendants argue that all eight causes of action "depend[] on the existence of a valid and enforceable [c]ontract" and should be dismissed because "Plaintiffs failed to allege that the [Written] Contract was valid at the time of the alleged breach(es) in 2023 and 2024."  (Doc. 3-1 at 2.)

In their Opposition, Plaintiffs argue that the Parties' conduct extended or renewed the Written Contract by implication.  (Doc. 5 at 5.)  Plaintiffs assert that they continued to perform under the Written Contract and "[the DePrey] Defendants continued to act as sales representatives for Plaintiff[s] long after the [Written] Contract's expiration date."  (*Id.*)

## II.    LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### III. DISCUSSION

The DePrey Defendants seek to dismiss all eight causes of action against them based solely on their contention that Plaintiffs failed to allege the existence of a valid contract. (Doc. 3-1 at 5.) In their Opposition, Plaintiffs contend that "Defendant's arguments are premature and concern factual disputes, which cannot be resolved on a motion to dismiss." (Doc. 5 at 5 (citing *Iqbal*, 556 U.S. at 678).) Plaintiffs further argue that the Written Contract is enforceable because "[t]he facts, as alleged in the Complaint, establish that Defendants, by their conduct, extended the terms of the [Written Contract] even absent a formal written agreement to do so." (Doc. 5 at 4.)

As a preliminary matter, the DePrey Defendants do not raise any additional arguments challenging the legal sufficiency of Plaintiffs' Complaint. (*See* Doc. 3-1 at 4–5.) As such, the Court limits the scope of its ruling to the arguments raised by the DePrey Defendants and declines to address whether the allegations are otherwise sufficient to state a claim. *See Khademi v. South Orange County Cmty. College Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002) ("A judge is . . . neither required to hunt down arguments [the parties] keep camouflaged, nor required to address perfunctory and undeveloped arguments . . . [T]o the extent that [Defendant] failed to develop any additional argument[s] or provide any legal support for them, [it] has waived them.") (citing *Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001)); *see, e.g., Est. of Johnson v. Cnty. of Sacramento*, No. 2:23-cv-01304-KJM-JDP, 2024 WL 279137, at *6 (E.D. Cal. Jan. 25, 2024) (declining to review the sufficiency of plaintiffs' allegations on its own initiative where defendant failed to develop such arguments in its motion to dismiss); *cf. Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (noting that courts may review inadequacy of a complaint on its own initiative and dismiss a complaint after giving plaintiff notice and opportunity to respond).

A. **Contract Claims (First, Second, and Fifth Causes of Action)**

1. **Breach of Written Contract (First Cause of Action)**

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citation omitted). Under California law, "[a] written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect." *Quick Dispense, Inc. v. Vitality Foodservice, Inc.*, No. 8:23-CV-02322-FWS-ADS, 2024 WL 2925589, at *9 (C.D. Cal. June 4, 2024) (citing *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006)). On a motion to dismiss, "[r]esolution of contractual claims . . . is proper if the terms of the contract are unambiguous." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000)). "A contract provision is ambiguous where it is capable of two or more reasonable interpretations." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008) (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993)).

Plaintiffs argue that the validity of the Written Contract "concern[s] factual disputes, which cannot be resolved on a motion to dismiss." (Doc. 5 at 5 (citing *Iqbal*, 556 U.S. at 678).) However, the Court finds that the DePrey Defendants challenge the sufficiency of the Complaint based on contradictions between Plaintiffs' allegations and the Written Contract, attached as Exhibit C to the Complaint (*see* Doc. 1-2, Ex. C at 7–12). *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The [C]ourt need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

In this case, Plaintiffs allege that "the [Written Contract] was still in full force and effect at the time of the breach by [Defendant] DePrey" on December 19, 2023. (Compl. ¶¶ 18–20.) However, the Written Contract provides that it would continue "for an initial

term of one year unless sooner terminated pursuant to Section 10. After the end of the initial term, this [Written Contract] may be automatically renewed for successive one-year periods *upon written agreement* by parties." (Doc. 1-2 at 10 (emphasis added).) Based on its review of the Written Contract, the Court finds that its express terms are unambiguous and demonstrate that the Parties intended for its duration to last one year and for its renewal to be contemplated in writing. *See Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992) ("If contractual language is clear and explicit, it governs.") (citing Cal Civ. Code § 1638); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003) ("[The parties' mutual] intent is to be inferred, if possible, solely from the written provisions of the contract.") (citation omitted). As Plaintiffs do not allege that the Parties agreed to its renewal in writing, the Written Contract effectively terminated on May 3, 2022. *See Citizens for Amending Proposition L v. City of Pomona*, 28 Cal. App. 5th 1159, 1189 (2018) ("It is the general rule that when a contract specifies its duration, it terminates on the expiration of such period.") (quoting *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650, 654 (1960)).

While Plaintiffs contend that the Parties' conduct impliedly renewed the Written Contract, the Complaint does not contain sufficient facts to plausibly allege the existence of an implied-in-fact contract. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers such as a memorandum in opposition to a defendant's motion to dismiss."); *Candor v. United States*, 1 F. Supp. 3d 1076, 1082 (S.D. Cal. 2014) ("[A complaint] may not be amended by briefs in opposition to a motion to dismiss.") (citation omitted). "[A] contract implied in fact consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Retired Employees Ass'n of Orange County, Inc. v. County of Orange*, 52 Cal. 4th 1171, 1178 (2011) (cleaned up).

Here, Plaintiffs do not provide the effective date of the implied renewal, its duration, or any other specific terms. (*See generally* Compl. ¶¶ 14–24.) Plaintiffs also do not allege

that the DePrey Defendants' conduct as sales representatives, which they claim formed the implied renewal, continued after the Written Contract formally terminated.[5] *See Allen v. Nextera Energy Operating Servs.*, LLC, No. C 12-01610 LB, 2012 WL 1918930, at *2 (N.D. Cal. May 25, 2012) (finding a "breach claim is wholly conclusory and falls short of the pleading standards mandated by *Iqbal* and *Twombly*" where it does not include details such as "when the implied contract took effect, how it was formed, or its specific terms."). Instead, Plaintiffs specifically allege that the DePrey Defendants engaged in conduct contrary to the terms of the Written Contract after its termination. (*See* Compl. ¶¶ 27–28.)

For these reasons, Plaintiffs fail to state a plausible claim for breach of the Written Contract. The Motion to Dismiss is therefore **GRANTED** as to the First Cause of Action. Nonetheless, the Court grants Plaintiffs leave to amend based on their contentions concerning an implied-in-fact contract. *See* Fed. R. Civ. P. 15(a); *Cook v. Northern Cal. Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing (Second Cause of Action)

California law implies a covenant of good faith and fair dealing in every contract. *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1085–86 (C.D. Cal. 2017), *aff'd*, 747 F. App'x 643 (9th Cir. 2019) (citing *Keshish v. Allstate Ins. Co.*, 959 F. Supp. 2d 1226, 1232 (C.D. Cal. 2013)). "Although breach of the implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of contract." *Digerati Holdings, LLC v. Young Money Ent., LLC*, 194 Cal. App. 4th 873, 885 (2011).

---

[5] Plaintiffs also allege that Defendant Gray "continued to use Plaintiffs' FedEx account" and was still employed when the alleged breach of the Written Contract occurred. (Compl. ¶¶ 13, 21.) However, as the Court previously noted, this Order only addresses the claims as to the DePrey Defendants.

Because Plaintiffs fail to allege the existence of a valid contract at the time of the alleged breach (*see* Sec. III.A.1), the Court finds that Plaintiffs also fail to a state a claim for breach of the implied covenant of good faith and fair dealing.  Accordingly, the Motion to Dismiss is **GRANTED** as to the Second Cause of Action with leave to amend.

### 3.     Unjust Enrichment (Fifth Cause of Action)

"When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).  An unjust enrichment claim fails as a matter of law where an express contract between the parties exists which governs the subject matter of the claim. *Yang v. Dar Al–Handash Consultants*, 250 Fed. Appx. 771, 773 (9th Cir. 2007).  However, "where there is an existing express contract, a party may only bring a claim for restitution if the contract is unenforceable, procured by fraud, or otherwise inapplicable." *Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*, 698 F. Supp. 3d 1210, 1219 (E.D. Cal. 2023) (citing *Rutherford Holdings*, 223 Cal. App. 4th at 231).

Although Plaintiffs may not be able to recover on this claim if there is a valid enforceable contract governing the claims, "[i]t would be improper to exclude the quasi contract claim on the basis that it cannot co-exist alongside a contract remedy because the Court has yet to determine whether a contract remedy is available to Plaintiff[s]." *Professor Brainstorm, LLC* 2009 WL 10675891, at *3.  In this case, the Court granted Plaintiffs leave to amend their contractual claims based on their contention that an implied contract existed at the time of the alleged breach.  Because the Court has not yet determined whether remedies are available based on an implied contract, it will allow the unjust enrichment claim to proceed at this stage. *See Echo & Rig Sacramento, LLC*, 698 F. Supp. 3d at 1219.  The Motion to Dismiss is therefore **DENIED** as to the Fifth Cause of Action.

### B.     Intentional Interference with Prospective Advantage (Third Cause of Action)

To state a claim for intentional interference with a prospective economic advantage, Plaintiff "must plead that the defendant engaged in an independently wrongful act' outside

of merely interfering with a contract." *Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1012 (S.D. Cal. 2019) (cleaned up).  An act is "independently wrongful" if it is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1139, 131 (2003).  This requirement is the "defining and limiting . . . aspect of the tort of intentional interference with a prospective economic advantage." *Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*, 71 Cal. App. 5th 528, 539 (2021).

While the existence of a valid contract is an element of this claim, Plaintiffs' claim fails because it is premised on the DePrey Defendants' alleged breach of the Written Contract.  In the Complaint, Plaintiffs allege that the DePrey Defendants interfered with Plaintiffs' third-party contracts "when they intentionally directed open purchase orders meant for Plaintiffs to [a third party.]"  (Compl. ¶ 58.)  This is the same conduct which Plaintiffs allege constituted the DePrey Defendants' breach of the Written Contract.  (*See* Compl. ¶¶ 33–34.)  As Plaintiffs fail to state a breach of contract claim, they cannot plead a wrongful act based on the same alleged breach.  Moreover, "[u]nder California law, a breach of contract cannot constitute the 'wrongful' conduct required for the tort of interference with prospective economic advantage." *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1235 (E.D. Cal. 2018).

Accordingly, Plaintiffs do not allege a "wrongful act" separate and apart from the alleged breach of contract and therefore fail to state a claim for intentional interference with a prospective economic advantage.  The Motion to Dismiss is therefore **GRANTED** as to the Third Cause of Action with leave to amend.

C.     **Remaining Causes of Action**

Plaintiffs assert additional claims for: (1) tortious interference with business relations (Fourth Cause of Action); (2) civil conspiracy (Sixth Cause of Action); (3) federal Racketeer Influenced and Corrupt Organizations Act ("RICO") violations (Seventh Cause of Action); and (4) intentional misrepresentation (Eighth Cause of Action).

For the reasons previously stated (*see* Sec. III), the scope of this Order is limited and only addresses the DePrey Defendants' contention that all causes of action rely on the enforceability of the Written Contract. Thus, the Court does not reach the question of whether Plaintiffs' pleadings otherwise plead adequate allegations and sufficient facts to state any of the remaining claims under Rule 12(b)(6).

### 1. Tortious Interference with Business Relations (Fourth Cause of Action)

To state a claim for intentional interference with business relations, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage." *Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015) (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008)).

Unlike Plaintiffs' claim for intentional interference with prospective economic advantage, this claim does not rely on the existence of a valid contract because it does not "require[] that the defendant's conduct be wrongful by some legal measure other than the fact of interference itself." *Id.* (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)). Because the Court does not reach the question of whether Plaintiffs otherwise plead adequate allegations and sufficient facts to state a claim for tortious interference with business relations, the Motion to Dismiss is **DENIED** as to the Fourth Cause of Action.

### 2. Civil Conspiracy (Sixth Cause of Action)

The elements of a claim for civil conspiracy are: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995). Here, Plaintiffs premise their civil conspiracy claim on the DePrey Defendants' alleged breach of contract, interference with business relations, and interference with prospective economic advantage. (Compl. ¶¶ 74–75.)

Because Plaintiffs have not stated a plausible claim for intentional interference with prospective economic advantage (*see* Sec. III.B), it cannot supply the "wrongful conduct" tort required to state a claim for civil conspiracy. Moreover, even if Plaintiffs had sufficiently alleged a breach of contract claim, their civil conspiracy claim cannot be based on the DePrey Defendants' alleged breach. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 508 (1994) (holding that a contracting party cannot be liable for civil conspiracy to interfere with its own contract). To the extent Plaintiffs' civil conspiracy claim is premised on Defendants' alleged breach of contract and interference with prospective economic relations, Plaintiffs' Sixth Cause of Action therefore fails.

However, Plaintiffs claim for tortious interference with business relations has not been dismissed and may provide an independent substantive basis for conspiracy liability. Accordingly, to the extent Plaintiffs' civil conspiracy claim is premised on the DePrey Defendants' alleged interference with business relations, the Motion to Dismiss is **DENIED** as to the Sixth Cause of Action. The Court again notes that it does not reach the question of whether Plaintiffs otherwise plead adequate allegations and sufficient facts to state a claim for civil conspiracy.

### 3. Federal RICO Violations (Seventh Cause of Action)

RICO provides a private right of action for "[a]ny person injured in his business or property" by a RICO violation. 18 U.S.C. § 1964(c). To state a RICO claim, a plaintiff must allege: (1) the conduct; (2) of an enterprise affecting interstate commerce; (3) through of pattern; (4) of racketeering activity; and (5) the conduct must be the proximate cause of harm to the victim. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (first citing 18 U.S.C. § 1962(c); and then citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496–97 (1985)). Racketeering activity "encompass[es] dozens of state and federal offenses, known in RICO parlance as predicates." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 330 (2016). Plaintiffs allege that Defendants violated § 1962(d) of the civil RICO Act (Compl. ¶ 85), which requires "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation

of two predicate offenses." *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). "Rule 9(b)'s [particularity] requirement . . . applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) (cleaned up).

Here, Plaintiffs allege the DePrey Defendants engaged in a "scheme to interfere with [Plaintiffs'] business relations and income." (Compl. ¶ 86.)[6] While Plaintiffs do not specify any predicate acts, they allege the DePrey Defendants committed several wrongful acts in violation of RICO including "common law fraud, unjust enrichment, intentional interference with contract and business relations, and civil conspiracy." (*Id.* ¶ 84.)

Plaintiffs' failure to allege the existence of a valid contract between the Parties does not in and of itself defeat the RICO claim. The Motion to Dismiss is therefore **DENIED** as to the Seventh Cause of Action. While the Court has concerns as to the sufficiency of Plaintiffs' allegations, it does not reach the question of whether Plaintiffs plead adequate allegations and sufficient facts to state a claim for RICO violations. *See Iqbal*, 556 U.S. at 678–79 (holding plaintiff failed to sufficiently state RICO claim, where complaint lacked "sufficient factual matter" to support "legal conclusions").

### 4. Intentional Misrepresentation (Eighth Cause of Action)

"To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) a misrepresentation; (2) knowledge that the representation was false; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance on the misrepresentation; and (5) resulting damage." *Hougue v. City of Holtville*, No. 07cv2229 WQH (WMc), 2008 WL 1925249, at *8 (S.D. Cal. Apr. 30, 2008) (citation omitted).

In support of this claim, Plaintiffs allege the DePrey Defendants "continu[ed] to communicate to Plaintiffs that the transaction structures of the agreements by and between Plaintiffs [and Defendants] were being implemented, leading Plaintiffs to believe that all orders being placed from Fastenal were being billed by and through Plaintiffs." (Compl. ¶

---

[6] The Court notes that Plaintiffs allege only one interference concerning the third party company, Fastenal. (*See* Compl. ¶ 86.)

90.) Plaintiffs also allege the DePrey Defendants made such "false and misleading" representations "with the intent to deceive and mislead Plaintiffs" to rely on them and "not interfere with their concerted effort to defraud Plaintiffs." (*Id*. ¶¶ 93–95.) As a result, Plaintiffs were allegedly "denied the benefits of the agreements" and "suffered damages in an approximate amount of $800,000.00." (*Id*. ¶¶ 91, 97.)

Although the alleged representations relate to the Parties' contractual obligations, Plaintiffs' intentional misrepresentation claim does not rely on the validity of the Written Contract. The Motion to Dismiss is therefore **DENIED** as to the Eighth Cause of Action. The Court nonetheless notes that it does not address whether Plaintiffs' allegations satisfy the requisite particularity standard under Rule 9 because the Parties do not raise this argument in their briefing. *See* Fed. R. Civ. P. 9(b).

## IV.   CONCLUSION

For the foregoing reasons, the DePrey Defendants' Motion to Dismiss (Doc. 6) is **GRANTED IN PART** and **DENIED IN PART**. Specifically:

1. The DePrey Defendants' Motion to Dismiss is **GRANTED** as to the First, Second, and Third Causes of Action with leave to amend.
2. The DePrey Defendants' Motion to Dismiss is **DENIED** as to the Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action.

Should Plaintiffs choose to amend their Complaint, they must file a first amended complaint on or before **June 13, 2025**. The Deprey Defendants must respond to the amended complaint on or before **June 27, 2025**. Should Plaintiffs choose not to amend and proceed on their Complaint without the dismissed claims, the DePrey Defendants shall file an Answer to the Complaint on or before **June 20, 2025**.

**IT IS SO ORDERED**.

DATE: May 29, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE